UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DANETTE DESDUNES, ET AL. | * | CASE NO. 14-1226 |
| vs. | * | SECT. F(2) |
| CHRISTOPHER SOYEZ, ET AL. | * | JUDGE FELDMAN |
| | * | MAG. WILKINSON |

***************************************

## FIRST AMENDED COMPLAINT

NOW COME the plaintiffs, through counsel, and hereby amend their previously filed Complaint to add two new parties to this litigation, a new plaintiff and a new defendant, and to correct one of the original plaintiff's name. The new plaintiff is **KAWANDA EDWARDS**, who is the mother of the minor **ALKIA EDWARDS**. The deceased, Allen Desdunes, was **ALKIA EDWARDS** father. Additionally, the plaintiffs add as a defendant **JOHN DOE #1**, who on information and belief is the agent of the Federal Bureau of Investigation who fatally shot Allen Desdunes on July 30, 2014. Finally, plaintiffs amend their complaint to state that **ALLEN HARRIS** is the son of Allen Desdunes. The original complaint incorrectly named Mr. Harris as "Allen Desdunes, Jr." For ease of reference, Plaintiffs amend and restate their Complaint in its entirety as follows:

## I.      JURISDICTION

1.       This action is brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S.388 (1971), 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and 42 U.S.C.§ 1988. Jurisdiction is founded on 28 U.S.C. §§ 1331

and 1343, and the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States. The Plaintiffs request that the Court exercise supplemental jurisdiction over state law claims.

## II.    PARTIES

### (Plaintiffs)

2.    **DANETTE DESDUNES** is an adult citizen of the State of Louisiana residing in the Eastern District. She is the widow of Allen Desdunes. She brings this suit individually and on behalf of her deceased husband.

3.    **JEREMIAH GREEN** is a surviving major son of the deceased, Allen Desdunes. Mr. Green is an adult citizen of the State of Louisiana residing in the Eastern District. He brings this suit individually and on behalf of his deceased father.

4.    **ALLEN HARRIS**, is a surviving major son of the deceased, Allen Desdunes. Mr. Harris is an adult citizen of the State of Louisiana residing in the Eastern District. He brings this suit individually and on behalf of his deceased father.

5.    **KAWANDA EDWARDS** is an adult citizen of the State of Louisiana residing in the Eastern District. She is the mother of **ALKIA EDWARDS**, who is the minor son of the deceased, Allen Desdunes. She brings this suit on behalf of her son, who in turn brings this suit individually and on behalf of his deceased father.

**(Defendants)**

**Named defendants herein are:**

6.      **JOHN DOE #1**, who is sued in his individual capacity, was, at all times pertinent to this complaint, an agent of the Federal Bureau of Investigation, and was acting under color of federal law.[1]

7.      **CHRISTOPHER SOYEZ**, who is sued in his individual capacity, was, at all times pertinent to this complaint, an agent of the Federal Bureau of Investigation, and was acting under color of federal law.

8.      **ROBERT BAIRD**, who is sued in his individual capacity, was, at all times pertinent to this complaint, an agent of the Federal Bureau of Investigation, and was acting under color of federal law.

9.      **WILLIAM WILLIAMS,** who is sued in his individual capacity, was, at all times pertinent to this complaint, an agent of the Federal Bureau of Investigation, and was acting under color of federal law.

10.      **JOHN DOES 2-3** are as of yet unknown agents of the FBI, who are sued in their individual capacities and were, at all times pertinent to this complaint, acting under color of federal law.

11.      **NATHAN GEX**, who is sued in his individual capacity, was, at all times pertinent to this complaint, an NOPD officer, and was acting under color of law.

12.      **DEREK A. BURKE**, who is sued in his individual capacity, was, at all times pertinent to this complaint, an NOPD officer, and was acting under color of law.

---

[1] Plaintiffs name this defendant as John Doe #1 by agreement with and pursuant to a joint motion for a Privacy Act Order (Rec. Doc. #10) filed with counsel for this defendant, Assistant United States Attorneys Peter Mansfield and Andre Legarde.  Plaintiffs will file a motion to file under seal a version of this Amended Complaint containing the defendant's true name.  AUSA Legarde has been authorized to accept service on behalf of this defendant.

13.    **ANTHONY ROME**, who is sued in his individual capacity, was, at all times pertinent to this complaint, an NOPD officer, and was acting under color of law.

14.    **CHRIS HARRIS**, who is sued in his individual capacity, was, at all times pertinent to this complaint, an NOPD officer, and was acting under color of law.

15.    **JOHN DOES 4-6** are as of yet unknown NOPD officers, who are sued in their individual capacities, and were, at all times pertinent to this complaint, acting under color of law.

16.    Defendant **CITY OF NEW ORLEANS** is a political subdivision of the State of Louisiana, and was the employer of Defendants **GEX, BURKE, ROME, HARRIS,** and **JOHN DOES 4-6**.  At all times relevant to this complaint, the City was responsible for the policies, practices, and customs of the New Orleans Police Department (the "NOPD")

### III.    FACTUAL ALLEGATIONS

17.    On July 30, 2013, the decedent, Mr. Allen Desdunes, an African American citizen of the United States, was in his car at a hotel off from Interstate 10 in New Orleans East. Mr. Desdunes and some of his family members sometimes frequented the hotel to use the pool.

18.    Mr. Desdunes was in the driver seat of his car, and he had a passenger with him, Mr. Terry Lane.  Mr. Desdunes and Mr. Lane had been parked in the rear parking lot of the hotel, behind the hotel's last building.

19.    As Mr. Desdunes and Mr. Lane began to drive out of the hotel parking lot, two cars approached them from the front of the hotel at a high rate of speed.  The two cars were unmarked law-enforcement vehicles which were occupied by the defendant members of the FBI and the NOPD.

4

20.     One of the cars struck Mr. Desdunes's vehicle in the front, while the other car rammed his vehicle in the rear driver side portion.  The airbags in Mr. Desdunes's car deployed.

21.     Seconds later, a gunshot or gunshots were fired by one or more of the Defendants.

22.     A shot struck Mr. Desdunes in the head at close range and fatally wounded Mr. Desdunes, who died at the scene.  On information and belief, this shot was fired by defendant **JOHN DOE #1**.

23.     Mr. Desdunes was unarmed, there were no weapons in his vehicle, and he did nothing to provoke the Defendants' unjustified use of excessive and deadly force, including the force used by **JOHN DOE #1**.

24.     The Defendants failed to intervene in order to stop the ramming of Mr. Desdunes' car and to prevent his fatal shooting despite having the opportunity and duty to do so.

25.     The actions of the Defendants in ramming Mr. Desdunes's car, unjustifiably shooting him, failing to intervene to stop the use of excessive and deadly force, and later covering up their unconstitutional conduct, were done knowingly, jointly, and in concert, and thereby constituted a conspiracy under the Constitution and laws of the United States, including, but not limited to, the Fourth, Fifth and Fourteenth Amendments and 42 U.S.C. § 1983.

26.     The actions and inactions of the Defendants as described above, directly and proximately caused Mr. Desdunes severe fear, mental and physical pain and suffering, mental anguish, and, ultimately, the loss of his life.

27.     Mr. Desdunes's causes of action survive and are now brought as survival actions by the Plaintiffs, who also bring this action for the wrongful death of Mr. Desdunes.

28.     Additional damages suffered by the Plaintiffs herein include, but are not limited to, funeral and related expenses, loss of support resulting from the death of Mr. Desdunes, loss of love, companionship, and the affection of and for their loved one, and extreme mental anguish and distress over the loss of their loved one.

## IV.     CAUSES OF ACTION

### COUNT I
### (*Bivens* and § 1983)

29.     The actions of Defendants **JOHN DOE #1, SOYEZ, BAIRD, WILLIAMS, GEX, BURKE, ROME, and JOHN DOES 2-6**, individually, jointly and/or in conspiracy in ramming Mr. Desdunes's car, unjustifiably shooting him, failing to intervene to stop the use of excessive and deadly force, and later covering up their unconstitutional conduct, violated Mr. Desdunes's Fourth, Fifth and Fourteenth Amendment rights, as well as 42 U.S.C. § 1983, and thereby directly and proximately caused the damages set forth above.

### COUNT II
### (42 U.S.C. §§ 1985, 1986 Claim for Conspiracy)

30.     Plaintiff re-alleges paragraphs 1 through 27.

31.     Defendants **JOHN DOE #1, SOYEZ, BAIRD, WILLIAMS, GEX, BURKE, ROME, and JOHN DOES 2-6**, individually, and together with others unknown, including police and prosecutorial investigative, supervisory, and command personnel, together reached an understanding, engaged and continue to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to commit the unconstitutional overt acts set forth in the facts above.

32.     Because said conspiracy or conspiracies and the overt actions in furtherance thereof were done and continue to be done with the knowledge and purpose of depriving Allen Desdunes, who was African American, of the equal protection of the laws and/or of equal privilege and immunities under the law, and with racial animus toward the Plaintiffs, the Defendants also deprived Plaintiffs of their right to equal protection of the laws under the Fourteenth Amendment, and 42 U.S.C. § 1985.

33.     Additionally or alternatively, Defendants **JOHN DOE #1**, **SOYEZ, BAIRD, WILLIAMS, GEX, BURKE, ROME,** and **JOHN DOES 2-6**, knowing that the above §1985 conspiracy to deprive Allen Desdunes of his constitutional rights was about to be committed, and having the power to prevent or aid in preventing the commission of the acts in furtherance of said conspiracy, neglected and/or refused so to do, in violation of 42 U.S.C.§1986.

### COUNT III
### (42 U.S.C. § 1983 *Monell* Policy Claim Against the City of New Orleans)

34.     Plaintiffs re-allege paragraphs 1 through 31.

35.     The actions of Defendants **JOHN DOE #1, SOYEZ, BAIRD, WILLIAMS, GEX, BURKE, ROME, and JOHN DOES #2-6,**  alleged above, were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the Defendant **CITY OF NEW ORLEANS**.

36.     At all times material to this complaint, the Defendant **CITY OF NEW ORLEANS**, through its Police Department, had interrelated *de facto* policies, practices, and customs which included, *inter alia*:

   a.  Failing to properly screen before hiring and failing to properly supervise, discipline, train or control police officers and supervisors under its

7

jurisdiction and control, including the defendant officers, supervisors and commanders.

b.      Failing to adequately or properly investigate allegations of misconduct and/or violations of law by police officers, supervisors or commanders or to properly initiate or conduct investigations of officers, supervisors or commanders suspected of misconduct and/or violations of law and instead tolerating the misconduct and mistreatment of citizens, including the actions of defendant officers, supervisors and commanders.

c.      Failing to take reasonable and necessary steps to properly investigate, charge, maintain and defend disciplinary action for misconduct against officers, supervisors or commanders, so that disciplinary investigations and actions, when taken, were frequently undermined, with the result that they were frequently abandoned, reduced or lost on appeal with a corresponding decay and decline in professionalism, accountability and discipline in the police department, to the detriment of the civil rights of residents and visitors to the City.

d.      Failing to keep accurate and reasonable records of incidents involving allegations of police misconduct and the investigation, handling and resolution of those incidents, in order to avoid public scrutiny and accountability as to the extent of the misconduct and the inability of the department to police itself.

e.      Failing to conduct appropriate in-service training, re-training or enhanced supervision of officers who were known or believed or suspected to have engaged in misconduct but for whom disciplinary action was not available for whatever reason.

f.      Failing to reasonably or appropriately monitor civil litigation or police misconduct revealed through criminal proceedings so as to take corrective and/or disciplinary action when necessary, including the actions of the defendant officers, supervisors and commanders.

g.      Failing to keep accurate or easily accessible records of the amount of money spent by the City in defending, settling and paying judgments in litigation involving misconduct by police personnel, so as to avoid accountability and scrutiny of the extent of the problem of police misconduct.

h.      Failing to properly operate, maintain and staff an adequate "early warning system" to flag police personnel for whom there is concern regarding improper behavior or violation of citizens' rights or emotional or psychological conditions which could lead to violation of citizens' rights

8

and to institute appropriate monitoring, supervision, training or intervention regarding said officers.

i.  Failing to properly operate, maintain and staff an adequate internal investigative agency to identify, investigate and take appropriate action against police personnel when there is available information indicating the officer has violated a citizen's rights or otherwise engaged in misconduct, including but not limited to failing to keep adequate or reasonable records of citizen calls and complaints, failing to conduct meaningful investigation or analysis of patterns of misconduct, failing to conduct pro-active investigations or other appropriate or reasonable measures to protect citizens from abuse of their rights by police officers.

j.  Failure to establish a reliable, professional system for independent and objective monitoring of the NOPD's policies, practices, procedures, customs and operations so as to insure that professional standards and "best practices" are in place and are being implemented.

k.  Condoning, approving and authorizing a culture and environment within the NOPD in which NOPD personnel, including the defendants herein, had the reasonable belief or expectation that their actions would not be properly monitored by supervisory or command officers and that their misconduct and/or unlawful actions would not be thoroughly investigated or sanctioned, but would be approved and tolerated.

l.  Failing to adequately hold supervisory or command officers responsible for misconduct of their subordinates.

m.  Perpetuating, encouraging and condoning the police code of silence, whereby police officers refuse to report or otherwise cover-up instances of police misconduct, and/or fabricate, suppress and destroy evidence of which they are aware, despite their obligation under the law and police regulations to report.  This code of silence causes police officers either to remain silent or to give false and misleading information during official investigations and Grand Jury proceedings in order to protect themselves and/or fellow officers from internal discipline, civil liability, and/or criminal charges.

37.    Said interrelated policies, practices and customs, as set forth above, both

individually and together, were maintained and implemented with deliberate indifference.

They encouraged, and were a moving force behind, *inter alia*, the use of excessive and

deadly force as described in this complaint, as well as the cover-up of the use of excessive and deadly force and the deprivation of the rights described above.

38.     Additionally, the **CITY OF NEW ORLEANS'S** failure to properly train, discipline, monitor, control, assign, transfer, supervise, and counsel Defendants **GEX, BURKE, ROME, HARRIS,** and **JOHN DOES 4-6** was also done with deliberate indifference and likewise acted as a moving force, and was a direct and proximate cause of the injuries to Plaintiffs.

**COUNT IV**
**(State Law Assault and Battery)**

39.     Plaintiffs re-allege paragraphs 1 to 38.

40.     The acts of Defendants **GEX, BURKE, ROME, HARRIS,** and **JOHN DOES #4-6,** as set forth above, individually, jointly, and in conspiracy, constituted assault and battery under the laws of the State of Louisiana.  Additionally, such acts directly caused the injuries to Mr. Desdunes and the Plaintiffs, as set forth above.

**COUNT V**
**(State Law Wrongful Death and Survival Action)**

41.     Plaintiffs re-allege paragraphs 1 to 38.

42.     The Plaintiffs are the legal heirs to the decedent herein, Allen Desdunes.

43.     As alleged herein, the actions and inactions of Defendants **GEX, BURKE, ROME, HARRIS,** and **JOHN DOES #4-6,** individually, jointly and in conspiracy**,** caused the wrongful death of Allen Desdunes on or about July 30, 2013.  As a result, the Plaintiffs have lost and will continue to lose pecuniary support, protection, care, assistance, society, companionship, comfort, service, and love and affection of decedent, Allen Desdunes.  Also as a result of Allen Desdunes's death, Plaintiffs have suffered and

will continue to suffer the mental anguish caused by this loss of pecuniary support,

protection, care, assistance, society, companionship, comfort, service, and love and

affection of their husband and father, Allen Desdunes.

44.     As a direct and proximate result of the wrongful conduct of Defendants **GEX,**

**BURKE, ROME, HARRIS,** and **JOHN DOES #4-6**, as described more fully herein,

Allen Desdunes suffered severe physical injuries both internally and externally, and

extreme fear and distress before his death.  Plaintiffs, as successors to Mr. Desdunes's

estate, bring this survival action for his damages.

**COUNT VI**
**(State Law Conspiracy to Cause Assault, Battery and Wrongful Death)**

45.     Plaintiffs re-allege paragraphs 1 to 44.

46.     Defendants **GEX, BURKE, ROME, HARRIS,** and **JOHN DOES #4-6** together

reached an understanding, engaged in a common venture, and otherwise jointly acted

and/or conspired among themselves to engage in the assault and battery that resulted in

the wrongful death of Allen Desdunes.

47.     As a direct and proximate result this conspiracy, Plaintiffs were injured, as

described herein, and have experienced, and continue to experience, severe emotional

distress and economic damages.

**COUNT VII**
**(State Law Intentional Infliction of Emotional Distress)**

48.     Plaintiffs re-allege paragraphs 1 to 47.

49.     The conduct and actions of Defendants **GEX, BURKE, ROME, HARRIS,** and

**JOHN DOES #4-6**, as set forth above, were extreme and outrageous and were done

intentionally, willfully, and wantonly, and/or knowing that there was a high probability

their conduct would cause the extreme emotional distress to the Plaintiffs herein.

50.     As a direct result of the extreme and outrageous conduct of Defendants **GEX, BURKE, ROME, HARRIS,** and **JOHN DOES #4-6**, as set forth above, the Plaintiffs suffered injuries including extreme emotional distress.  The conduct of these Defendants therefore constituted intentional infliction of emotional distress under Louisiana law.

## COUNT VIII
### (State Law Conspiracy to Inflict Severe Emotional Distress)

51.     Plaintiffs re-allege paragraphs 1 to 50.

52.     Defendants **GEX, BURKE, ROME, HARRIS,** and **JOHN DOES #4-6** together reached an understanding, engaged in a common venture, and otherwise jointly acted and/or conspired among themselves to engage in extreme and outrageous conduct by covering up the Defendants' culpability in the killing of Allen Desdunes.

53.     This extreme and outrageous conspiratorial conduct was with the intent, and/or had the effect of, directly and proximately causing Plaintiffs to suffer severe emotional distress, and each and every Defendant knew, or should have known, that their conduct would cause or be likely to cause Plaintiffs severe emotional distress.

54.     As a direct and proximate result this conspiracy, Plaintiffs were injured, and have experienced, and continue to experience, severe emotional distress.

## COUNT IX
### (State Law Respondeat Superior Claim)

55.     Plaintiffs re-alleges paragraphs 1 to 54.

56.     Defendants **GEX, BURKE, ROME, HARRIS,** and **JOHN DOES #4-6** were, at all times material to this complaint, employees of the Defendant **CITY OF NEW ORLEANS**, were acting within the scope of their employment, and their acts which

violated state law are directly chargeable to the Defendant City under state law pursuant to *respondeat superior*.

  **WHEREFORE**, Plaintiffs Danette Desdunes, Jeremiah Green, Allen Harris, and Kawanda Edwards, on behalf of Alkia Edwards, seek substantial compensatory damages as set forth above against Defendants City of New Orleans, John Doe #1, Soyez, Williams, Baird, Gex, Burke, Rome, and John Does #2-6, and, because each of the individual Defendants acted willfully, wantonly, and maliciously, for punitive damages, against all of the defendants except the City of New Orleans, plus attorneys' fees, costs, and whatever additional relief is deemed just and appropriate.

    Respectfully submitted,

    /s/ Stephen J. Haedicke

    _____

    **STEPHEN J. HAEDICKE** (Bar Roll No. 30537)
    Law Offices of Stephen J. Haedicke, LLC
    639 Loyola Ave. #1820
    New Orleans, LA  70113
    (504)525-1328 Telephone
    (504)910-2659 Fax
    haedickelaw@gmail.com

    -and-

    _____

    GARY W. BIZAL (#1255)
    639 Loyola Ave., #1820
    New Orleans, LA 70113
    P: 504.525-1328
    F: 504.525-1353

      **JURY DEMAND**

Plaintiffs demand a jury trial on all issues so triable.

    /s/ Stephen J. Haedicke

    _____

**STEPHEN J. HAEDICKE**